IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-136

No. COA20-181

Filed 20 April 2021

Avery County, No. 13 SPC 68

In re: E.W.P.

Appeal by respondent from order entered 26 June 2019 by Judge Alan Z. Thornburg in Avery County Superior Court. Heard in the Court of Appeals 23 February 2021.

*Robert T. Broughton, Special Deputy Attorney General, for Petitioner-Appellee*

*John F. Carella, Carella Legal Services, for Respondent-Appellant*

CARPENTER, Judge.

## I. Factual and Procedural Background

¶ 1 On 8 March 2004, Respondent was involuntarily committed to Broughton Hospital after being found incapable of proceeding to trial in Avery County Superior Court on charges including first degree murder, attempted murder, and assault with a deadly weapon with intent to kill inflicting serious injury. Specifically,

Respondent's charges involved the murder of Avery County Sherriff's Deputy Glenn Hicks and the attempted murder of Deputy Ralph Coffey. In 2013, the trial court found Respondent to be capable of proceeding to trial and to have a valid defense of insanity. The trial court dismissed the charges and ordered Respondent to be involuntarily committed at Central Regional Hospital pursuant to N.C. Gen. Stat. §§ 15A-1321 and 122C-268.1. The trial court retained jurisdiction over Respondent as a defendant found not guilty by reason of insanity, or an "NGRI defendant."

¶ 2      Dr. Wolfe, a forensic psychiatrist at Central Regional Hospital, has been Respondent's primary treating psychiatrist for over five years. At Respondent's 2017 recommitment hearing, Dr. Wolfe requested "(1) an increase from two hours to four hours of daily campus ground passes; (2) an increase of the [patient-to-staff] ratio from one-to-five to one-to-ten; and (3) quarterly, two-hour family supervised passes within thirty miles of the hospital campus." The trial court denied those requests. Respondent appealed from the 27 June 2017 recommitment order, and this Court found no error in an unpublished opinion issued on 6 November 2018. The North Carolina Supreme Court denied a petition for discretionary review.

¶ 3      On 12 June 2019, Respondent's case came on for a recommitment hearing in Avery County Superior Court before the Honorable Alan Z. Thornburg. Dr. Wolfe testified that what keeps Respondent in the hospital "is his murder, NGRI, and the dangerousness to others because of that incident." Dr. Wolfe testified that

Respondent's lack of insight, which she believed to be permanent, "causes his dangerousness." Dr. Wolfe testified Respondent remains convinced that he was protecting himself and acting in self-defense in 2003, and "that idea is always going to be there."

¶ 4        During the 2019 recommitment hearing, Respondent's treatment team sought an order granting increased privileges for Respondent. The increased privileges sought included more ground pass hours and a move to a lesser degree of supervision, specifically an increased patient-to-staff ratio, on public trips. Dr. Wolfe testified that increased privileges would be necessary to allow Respondent to work toward the goal of community reintegration.

¶ 5        However, Dr. Wolfe's testimony tended to show the need for a greater patient-to-staff ratio was in part based on the hospital's "budgetary concern." In her words, hospital staff were "always under scrutiny to decrease . . . staff spending. . . ." When asked on direct examination whether the purpose of the request for a greater patient-to-staff ratio was "essentially to see how [Respondent] was going to behave," Dr. Wolfe's response was: "I don't think that it's representative as much to see how he's going to behave as opposed to availability of staff in order to take patients out." Dr. Wolfe testified that the staff member who accompanies patients into the public places is unarmed, and that "most of the patients" on these public trips "have killed someone."

¶ 6    In its 26 June 2019 order, the trial court found as fact that Respondent continues to suffer from mental illness of delusional disorder and remains dangerous to others based on his past actions. The trial court found that the requested increase from two to four hours for grounds passes was merited. Regarding the two other requests, the trial court found as follows:

> b. As to the request for a decrease in the staff to patient supervision ratio . . . The Court finds that decreasing the level of supervision for off-hospital campus activities . . . could pose an increased risk to public safety. In light of this, this Court in its discretion determines that a decrease in Respondent's staff to patient supervision ratio for off-campus activities is not merited and is not allowed.
> c. As to the request for two hour family-supervised off campus passes within 30 miles of Central Regional Hospital, this Court finds that . . . other alternatives exists whereby hospital staff could supervise such off-campus visits and facilitate visits by the Respondent's family. In light of this evidence, this Court [in] its discretion determines that two hour family-supervised off campus passes within 30 miles of Central Regional Hospital are not merited, and are not allowed.

¶ 7    Respondent filed notice of appeal on 1 July 2019.

## II. Jurisdiction

¶ 8    Jurisdiction lies in this court pursuant to N.C. Gen. Stat. § 122C-272 (2019) over an appeal from a final judgment of a superior court. The issue of a court's subject matter jurisdiction may be raised at any time, even on appeal. *State v. High*, 230 N.C. App. 330, 334, 750 S.E.2d 9, 12 (2013).

### III. Issues

Respondent contends (1) the trial court erred by ordering a one-to-five ratio of staff supervision for Respondent because the trial court lacked jurisdiction to overrule qualified medical professionals on the decision; in the alternative, Respondent contends (2) the trial court abused its discretion by denying Respondent the ability to obtain family-supervised off-campus visitation and outings supervised at a one-to-ten ratio.

### IV. Analysis

#### A. *Trial Court Jurisdiction*

Respondent argues the trial court erred by ordering a one-to-five ratio of staff supervision because the court lacked jurisdiction to overrule qualified professionals on this decision. Whether a court has jurisdiction is a question of law reviewed *de novo* on appeal. *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010) (citation omitted). N.C. Gen. Stat. § 122C-62 is instructive regarding the basis for a trial court's jurisdiction over an NGRI defendant such as Respondent. N.C. Gen. Stat. § 122C-62(b) states in relevant part:

> (b) Except as provided in subsections (e) and (h) of this section, each adult client who is receiving treatment or habilitation in a 24-hour facility at all times keeps the right to:
> . . .
> (4) Make visits outside the custody of the facility unless:
> a. Commitment proceedings were initiated as the result of

> the client's being charged with a violent crime, including a crime involving an assault with a deadly weapon, and the respondent was found not guilty by reason of insanity or incapable of proceeding;
>
> . . .
>
> A court order may expressly authorize visits otherwise prohibited by the existence of the conditions prescribed by this subdivision[.]
>
> . . .
>
> (e) No right enumerated in subsections (b) or (d) of this section may be limited or restricted except by the qualified professional responsible for the formulation of the client's treatment or habilitation plan. . . .

N.C. Gen. Stat. § 122C-62(b) (2019).

The basis of Respondent's jurisdictional argument rests on the contention that he remained "in the custody" of the facility during his outings off the premises of the facility. Therefore, Respondent contends, the trial court had no jurisdiction to "overrule" the requests of his treatment team for lesser supervision on the outings. This Court, however, has interpreted N.C. Gen. Stat. § 122C-62 to hold "visits outside the custody of the facility include . . . visits off the premises." *In re Williamson*, 151 N.C. App. 260, 266, 564 S.E.2d 915, 919 (2002). In *Williamson*, this Court held an NGRI defendant "does not have a protected liberty interest in obtaining passes" for visits outside the custody of the facility. *Id.* at 266, 564 S.E.2d at 919.

As an NGRI defendant, Respondent falls within the class of "adult clients" subject to N.C. Gen. Stat. § 122C-62(b)(4). Section (b)(4) disallows NGRI clients receiving treatment in a 24-hour facility "the right to . . . make visits outside the

custody of the facility" without a "court order" that "expressly authorize[s]" such a visit. The trial court granted Respondent the right to make visits outside the custody of the facility at a one-to-five ratio.

¶ 13 Pursuant to N.C. Gen. Stat. § 122C-62(e), *if* such a right is granted to an NGRI defendant, only the qualified professional responsible for the formulation of the client's treatment or habilitation plan can limit or restrict it. N.C. Gen. Stat. § 122C-62(e) (2019). If such a right is not granted to an NGRI defendant at all, N.C. Gen. Stat. § 122C-62 does not grant the qualified professional the ability to grant it herself. Similarly, no part of N.C. Gen. Stat. § 122C-62 gives the qualified professional the ability to unilaterally expand the parameters of confinement and rights established by the trial court within the statutory structure set forth in N.C. Gen. Stat. § 122C as to an NGRI defendant. Only the trial court can grant the right to make visits outside the custody of the facility pursuant to N.C. Gen. Stat. § 122C-62, hence, Respondent's argument that the trial court effectively "overruled" a qualified professional on the decision to grant a right is without merit.

¶ 14 "There exists a need to monitor and keep the public safe from individuals (such as respondent) that often times have committed violent, dangerous or other criminal acts resulting in their involuntary commitment." *Williamson* 151 N.C. App. at 268, 564 S.E.2d at 920. We find the government's interest in keeping the public safe, in conjunction with the plain language of N.C. Gen. Stat. § 122C-62, provides the trial

court jurisdiction to determine the parameters of the confinement of an NGRI defendant within the statutory structure of N.C. Gen. Stat. § 122C, including the ability to leave the facility to which they are validly committed.

### B. *Abuse of Discretion*

¶ 15 Respondent argues in the alternative the trial court abused its discretion by declining Respondent's request for family-supervised off-campus visitation and outings supervised at a one-to-ten ratio. Abuse of discretion is the appropriate standard by which an appellate court reviews the determination of a trial court to grant or deny out of custody privileges for an NGRI defendant. *Id.* at 260, 564 S.E.2d at 919. "Under the abuse of discretion standard, our role is not to surmise whether we would have disagreed with the trial court, but instead to decide whether the trial court's ruling was so arbitrary that it could not have been the result of a reasoned decision." *State v. McGrady*, 368 N.C. 880, 899, 787 S.E.2d 1, 15 (2016) (citation omitted).

¶ 16 Substantial evidence exists in the record to support the trial court's findings of fact. Specifically, Dr. Wolfe's testimony that Respondent's permanent lack of insight "causes his dangerousness" provided sufficient support for the trial court's decision to decline Respondent's request for family-supervised off-campus visitation. Further testimony from Dr. Wolfe that the staff member who accompanies patients into the public places is unarmed, and that "most of the patients" on these public trips "have

killed someone," provided sufficient support for the trial court's decision to decline Respondent's request for outings supervised at a one-to-ten ratio. This Court therefore finds the trial court did not abuse its discretion by declining Respondent's request for family-supervised off-campus visitation or outings supervised at a one-to-ten ratio.

## V. Conclusion

We find the trial court's jurisdiction was proper based on the plain language of N.C. Gen. Stat. § 122C-62. Further, we find the trial court did not abuse its discretion, as substantial evidence existed in the record to support the trial court's findings of fact. For those reasons, we affirm the orders of the trial court.

AFFIRMED.

Judges ARROWOOD and GORE concur.